BURNETT v. BURNETT.

1. A father executed a deed whereby in consideration of the "affectionate love I have for my daughter B., and having special confidence in my brother C. and M. as trustees, I give to my daughter and the lawful heirs of her body the following property, or to the trustees for her and her heirs' use and benefit, ninety-two acres of land . . . reserving the use of the same during my life." *Held*, that the estate of the daughter was a fee-conditional, and at her death it passed *per formam doni* to the heirs of her body.
2. If regarded as a conveyance to trustees (which is doubtful), the estate both in B. and the heirs of her body would be of like quality, and there being nothing for the trustees to do, the statute would execute the uses.
3. The heirs of the body take the land *per formam doni*, but subject to the debts of the first taker.
4. The first taker had the power of alienation during her lifetime, but

35

she could not devise this land, and therefore a sale by her executor for the payment of her debts under a power given to him in her will was without authority.

5. The pleadings not being set out in the brief, this court cannot consider exceptions alleging error of the Circuit judge in passing upon matters not embraced in the pleadings.

Before FRASER, J., Spartanburg, June, 1881.

Action by J. W. Burnett and Margaret his wife, against Marcus Burnett, Matthew Burnett, William M. Kinney, and Mary his wife, and J. B. Davis, executor, commenced January 25, 1879. To the facts stated in the opinion it will be necessary to add only that William M. Kinney and Matthew Burnett were the purchasers of the land sold by Davis, as executor.

The case was referred to C. P. Wofford, Esq., as special referee, who made an able report, and the cause came on to be heard on exceptions by both sides to this report. The Circuit decree was as follows :

I concur with the referee in his construction of the deed of Mark Cantrell to Mary Burnett and also in the conclusion that the land was liable for Mary Burnett's (afterwards Mary Hammett's) debts after her death. I do not see that any other conclusion is consistent with the principles on which the cases referred to in the report are based. At the same time this Court is bound by the decision in *Jones ads. Postell et al.*, that such an estate cannot be aliened by a devise—creating a liability for debt is an act done in the *lifetime*, and a devise can only take effect at *the death*. A devise cannot change its essential character by making it a devise to pay debts, instead of a devise for any other purpose. If the land is liable for the debts, it must be by operation of law, and must be subjected to them in the way provided by law, and not in or through the operation of a devise to executors with a power of sale. There being no valid devise, the power of sale falls with it.

The amendment to rule 55 of the Circuit Court directs that no partition of real estate shall be made without " due provision made for the payment of debts."

The possession of this land held by Matthew Burnett and

William and Emiline McKinney, under the deeds of John Bankston Davis, the executor, after notice from the other parties of their objections to the sale is such an exclusive and adverse one as ought to make them liable for rent, and ought not to entitle them for improvements made for their own purposes, and in defiance of the rights of the other children. A man could be improved out of his estate against his will and protest if such a claim were allowed.

It is therefore ordered and adjudged that the deeds executed for these lands by the executor be delivered up by Matthew Burnett and William and Emiline McKinney to the Clerk of this Court to be cancelled by him, and that the notes given to the executor for the purchase money be given up by him, and any money received on account of these purchases be repaid to the purchasers respectively. That the said two tracts of land be sold.

From this decree plaintiffs appealed on the following exceptions, alleging error:

1. In holding that the land in controversy was liable for the payment of the debts of Mary Hammett, deceased.

2. In not holding that under the deed of Mark Cantrell the children of Mary Hammett took a fee simple estate in said lands.

3. In ordering a sale of said land when there was no proof of debts more than could be paid by the other property of Mary Hammett already sold by the executor.

4. In holding that the referee could pass upon other issues than those referred to him and embraced in the pleadings.

5. In making a decree not within the purview of the pleadings, nor relevant to the issues upon which testimony was taken.

6 In holding that even if the children of Mary Hammett are liable for her debts, such liability could be enforced in this action.

7. In holding that the land described in the pleadings is assets in the hands of the children of Mary Burnett for the payment of her debts.

8. In not decreeing that the defendants, or some of them, should pay the costs of this action.

9. In not holding that the plaintiffs are entitled to the relief demanded in the complaint.

Defendant, J. B. Davis, appealed on the following exceptions, alleging error :

1. In holding that the terms of the deed from Mark Cantrell to Mary Hammett did not convey a fee simple estate to Mary Hammett.

2. In holding that Mary Hammett had no authority under said deed to direct the sale of the land by her executor for the payment of her debts.

3. In holding that the deeds of J. Bankston Davis, as executor, did not convey good titles to the purchasers.

4. In holding that the land should be resold.

Mr. *J. S. R. Thomson,* for plaintiffs.

Messrs. *Bobo & Carlisle,* for defendant Davis.

August 8, 1882. The opinion of the Court was delivered by

MR. JUSTICE McIVER.—The principal questions in this case arise upon the construction of a deed which is couched in very informal and inartificial language. Its material terms are as follows: "Know all men by these presents that I, Mark Cantrell, for the bare affectionate love I have to my daughter, Mary Burnett, and having special confidence in my brother Lanceford Cantrell and Joseph W. Martin as Trustees, I give to my daughter and the lawful heirs of her body the following property, or to the Trustees for her and her heirs' use and benefit ninety-two acres of land lying . . . . reserving the use of the same during my life. And if my wife, Sarah Cantrell, is a longer liver than me, she is to have the use of the Home tract of land, for her support, and choice of the negroes and mares—2 cows and other household and kitchen furniture, as my trustees for my daughter and her lawful heirs think proper, during life or widowhood. And it is my earnest desire that my trustees attend to [here some words are manifestly omitted] agreeable to the intention of this writing or conveyance."

The grantor's wife pre-deceased him, and Mary Burnett, who subsequently intermarried with one Hammett, died in 1877, leaving no issue of her second marriage, Margaret the wife of the plaintiff J. W. Burnett, and the defendants Marcus Burnett, Matthew Burnett and Mrs. McKinney being her issue by her first marriage. By her will she appointed the defendant Davis executor, directing him to sell sufficient of her personal and real estate to pay her debts. The executor sold all of her property both real and personal, including the lands conveyed by the above mentioned deed, and the object of this action is to set aside the sale of these lands and to have the same partitioned amongst the above named heirs of Mary Hammett, formerly Mary Burnett.

The first question presented is as to the nature of the estate which Mary Hammett took in the lands conveyed by said deeds. Both the referee, to whom the issues in the action were referred, and the Circuit Judge held that she took an estate in fee conditional, and we concur with them in so holding. The deed, as will be seen, is very informal, but the conveying words are to Mary Burnett "and the lawful heirs of her body." The authorities universally hold that these are the apt words, to create an estate in fee conditional, and we are unable to discover anything in the terms of this deed to take this case out of the well-settled general rule. The subsequent words "or to the trustees for her and her heirs' use and benefit" cannot have this effect, for the word "heirs" as there used must be construed as meaning the same class of heirs—heirs of the body—which had previously been designated. The same remark will apply to the words "lawful heirs" as used in the latter part of the deed. These words are not found in the *habendum* clause, as suggested in one of the arguments, for there is no such clause in the deed, and must be regarded as used to indicate the same class of persons referred to in the conveying part of the deed.

Nor can the fact that trustees are interposed affect the question. For, even if the deed should be regarded as a conveyance to the trustees for the use of Mary and the lawful heirs of her body, about which there might be a serious ques-

tion, it would not take the case out of the operation of the rule in Shelley's case. It is true that the case of *Austin* v. *Payne*, 8 *Rich. Eq.* 9, does hold that where the estate of the ancestor and that limited to the heirs are not of the same quality, that is, where one is equitable and the other legal, the rule in that celebrated case will not apply. But that case recognizes the doctrine that where both estates are equitable it will apply. If, therefore, the deed should be regarded as creating an equitable estate, originally, in Mary, it created the same kind of an estate in the heirs of her body, and both estates lost that character when there was nothing for the trustees to do, as the statute would then execute the uses. *Bouknight* v. *Epting*, 11 *S. C.* 71, and the cases there cited. The only duty imposed upon the trustees was an exercise of their discretion as to what property the wife of the grantor should be allowed the use of, in the event she survived him; but as she died before the grantor, there was absolutely nothing for the trustees to do, and hence, even if it should be regarded that the deed conveyed the estate to the trustees, the statute would execute the uses, and the estates would become legal both in Mary and the heirs of her body.

Regarding then the estate as a fee-conditional, our next inquiry is whether it was liable for the debts of Mary Hammett, the first taker, in the hands of her heirs. In the case of *Izard* v. *Middleton*, *Bail. Eq.* 228, cited with approval in *Pearse* v. *Killian*, *McM. Eq.* 231, it was held that lands held in fee conditional are bound, after the birth of issue, by the lien of a judgment or decree, against the tenant in fee, in bar of the right of the issue to take *per formam doni*. It seems to me that the same reasoning which led to this conclusion would necessarily lead to the conclusion that land so held would be assets for the payment of debts even though not reduced to judgment; and such was the opinion of the distinguished Chancellor Harper, who delivered the opinion of the Court in *Izard* v. *Middleton*. At page 235 he says: " But if there had been no decree against Mr. Izard in his lifetime, yet if the heir takes only by succession from the ancestor, and in his right, it would seem to follow that whatever would be liable

to debts in his hands must be assets in the hands of the heir; and such is the purport of the *Statute* 5 *Geo.* 2, *Chap.* 7." It is true that this was only a *dictum*, inasmuch as in that case the debt had been reduced to judgment and had become a lien on the land during the lifetime of the first taker, yet it is a *dictum* supported not only by the great name of that eminent jurist, but by the unanswerable reasoning employed by him in that case.

The fundamental difference between an estate in fee conditional, after the condition has been performed, and an estate in fee simple is, 1st. That in the former the course of descent is confined to a particular class of heirs, and upon failure of such heirs the estate reverts to the donor; 2d. That the holder of such an estate can only dispose of it by some act which takes effect during his life. In all other respects their qualities and incidents are the same. In a grant of an estate in fee conditional, heirs of the body are not named on account of any benefit intended for them, or for the purpose of controlling or limiting the ancestor's power of disposition during his life, but simply for the purpose of prescribing the course of descent, in case no such disposition is made. In the case of a fee simple estate the law prescribes that the estate shall descend to the heirs generally, in case the ancestor makes no disposition of the estate, while in the case of an estate in fee conditional the instrument creating the estate confines the descent to a particular class of heirs. Both classes of heirs take by succession from the ancestor, and as in fee simple estates the heirs general take the estate subject to a liability for the debts of the ancestor, we see no reason why, in estates in fee conditional, the heirs of the body to whom the descent is confined should not take the estate in the same way.

Our next inquiry is as to the effect of the disposition made by Mary Hammett, *by will*, for the sale of the lands held by her in fee conditional. In this State it has been settled that an estate in fee conditional is not the subject of devise. *Jones ads. Postell, Harp.* 92. To allow such a power to a tenant in fee conditional would be to give him the power to disturb the course of descent fixed by the instrument creating

the estate, and hence it cannot, consistently with the nature of the estate, be allowed. The moment the first taker dies, without having alienated the estate in his lifetime, it descends to and rests in the heirs of his body, and his will, which can only take effect after his death, cannot divest the heirs of the estate. So, at common law, a joint tenant could during his life alien his estate, but he could not devise it for the reason that "no devise can take effect till after the death of the devisor, and all the land presently cometh by the law to his companion who surviveth," and the commentator remarks that Littleton "by the words *post mortem* and *per mortem* used in the text, though they jump at one instant, alloweth priority of time in the instant, which he distinguisheth by *per* and *post*. And the reason of this priority is that the survivor claimeth by the feofor, and therefore in judgment of law his title is paramount to the title of the devisee, and consequently the devise is void." *Co. Litt.* 180 *a.* It follows, therefore, that Mary Hammett had no right to devise the lands conveyed by the deed from Mark Cantrell, her power of disposition ceasing with her life, and that the sale thereof made by the executor, under the directions of her will, even though for the payment of debts, was without authority.

The points raised by the plaintiff's third, fourth and fifth grounds of appeal cannot be considered by us, as there is no copy of the pleadings set out in the "Case," and we are not at liberty to assume that the Circuit Judge went beyond the scope of the pleadings in rendering his decree. He was bound by the 55th Rule of the Circuit Court to make due provision for the payment of debts before ordering the partition asked for; and the counsel for the plaintiff is in error in supposing that it did not appear that the personal estate was insufficient for the payment of the debts, for the referee distinctly reported that the debts of Mary Hammett "amounted to very nearly the value of her whole estate."

The judgment of this court is that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McGOWAN absent at the hearing.