15120

JARECKY v. JARECKY

(9 S. E. (2d), 922)

Mr. L. Marion Gressette for appellant.

Mr. W. R. Symmes for respondent

July 8, 1940.

The opinion of the Court was delivered by MR. L. D. LIDE, *Acting Associate Justice.*

Morris Jeracky executed his last will and testament, dated January 26, 1918, the pertinent portion of which is as follows: "To my daughter, Hennie, I bequeath the sum of four thousand dollars in cash, and the property on Railroad Avenue, St. Matthews, S. C., containing two stores between stores now occupied by Fair's Pharmacy and Banks & Wimberly during the period of her life and after her death to her heirs."

The testator died shortly thereafter, and on March 11, 1918, the will was duly admitted to probate in Calhoun

County. Henrietta W. Jarecky, the respondent above named, is the testator's daughter, Hennie, mentioned in the quoted excerpt. She conveyed the real estate therein devised to her to Henru Land and Investment Company, taking back a mortgage for the credit portion of the purchase price. The mortgage was not paid, and suit was brought for the foreclosure thereof. Pursuant to the decree for foreclosure and sale the property was sold at public auction on salesday in December, 1939, by the Special Referee to A. H. Jarecky, the appellant above named, at and for the sum of $7,500.00, but the purchaser refused to comply with his bid, on the ground that Henrietta W. Jarecky took a life estate only under the will of her father, Morris Jarecky, and that hence he would not acquire a marketable title. A rule in due course was issued by the Court requiring the purchaser to show cause why he should not be compelled to comply with his bid, and upon the return to the rule Honorable G. Dewey Oxner, presiding Judge, held that under the paragraph above quoted from the will of Morris Jarecky his daughter, Henrietta W. Jarecky, took a fee-simple title by virtue of the rule in *Shelley's case,* and A. H. Jarecky was directed forthwith to comply with his bid. The cause comes to this Court upon an appeal from the order of Judge Oxner.

This appeal was obviously taken in the superabundance of caution, because the plain and explicit language contained in the will provides a typical instance for the application of the rule in *Shelley's case;* that is to say, there is a devise of a life estate with remainder over to the heirs of the life tenant, without qualification or superadded words.

This time-honored rule has often been defined and much discussed. A very clear and admirable definition is that given by Chancellor Harper in the case of *Williams v. Foster,* 3 Hill, 193, where he says: "By the rule in *Shelley's case,* which has been an admitted and established rule of law for centuries, and the wisdom of which is more approved as it is better understood, it was determined

that if an estate of freehold be given to the ancestor, and a remainder be thereon limited to his heirs, or to the heirs of his body, such remainder is immediately executed in possession in the ancestor so taking the freehold, and he takes an estate in fee or in tail, according to the terms of the limitation. This is an arbitrary rule of law unconnected with and independent of the donor's or testator's intention."

This case has been frequently cited, and the foregoing definition was quoted with approval in the quite recent case of *Hutto v. Ray,* 192 S. C., 364, 6 S. E. (2d), 747. If the language contained in the will of Morris Jarecky is construed in the light of the rule as thus defined it will be seen that an estate of freehold, that is to say, a life estate, was given to Henrietta W. Jarecky, and a remainder was thereon limited to her heirs; and hence the remainder was immediately executed in possession in Henrietta W. Jarecky, so that she took the whole estate in fee simple.

We do not deem it necessary to cite the many cases decided by this Court supporting this conclusion. A learned discussion of the whole matter will be found in the case of *Strother v. Folk,* 123 S. C., 127, 115 S. E., 605. See also *Sims v. Clayton,* 193 S. C., 98, 7 S. E. (2d), 724.

This rule of law was formally and authoritatively announced in the case from which it takes its name, to wit, *Shelley's case,* but it is said to have been of far more remote origin; and the following quotation from Blackstone's Commentaries, wherein he lucidly and quaintly states the principle and the theory upon which it is based, may be of interest: "But if an estate be made to A for life, remainder to his right heirs in fee, his heirs shall take by descent; for it is an ancient rule of law, that wherever the ancestor takes an estate for life, the heir cannot by the same conveyance take an estate in fee by purchase, but only by descent. And, if A dies before entry, still his heir shall take by descent, and not by purchase; for, where the heir takes anything

that might have vested in the ancestor, he takes by way of descent. The ancestor, during his life, beareth in himself all his heirs; and therefore, when once he is or might have been seised of the lands; the inheritance so limited to his heirs vests in the ancestor himself; and the word 'heirs' in this case is not esteemed a word of purchase, but a word of limitation, inuring so as to increase the estate of the ancestor from a tenancy for life to a fee simple. And, had it been otherwise, had the heir (who is uncertain till the death of the ancestor) been allowed to take as a purchaser originally nominated in the deed, as must have been the case if the remainder had been expressly limited to Matthew or Thomas by name; then, in the times of strict feudal tenure, the lord would have been defrauded by such a limitation of the fruits of his seigniory, arising from a descent to the heir." Jones' Blackstone, Volume 1, page 1030.

The rule in *Shelley's case* has been a recognized and consistently applied part of the real estate law of South Carolina from the earliest times, and while textbook writers and others have subjected it to some adverse criticism, it does indeed fit rather logically into the somewhat artificial system comprised in our common-law inheritance. Certainly it was logical and natural to construe the word "heirs" as a word of limitation or descent instead of purchase, although the transformation of an obviously intended life estate into a fee simple required rather subtle reasoning; but the practical effect, and perhaps a salutary one, was to facilitate the alienation of land and to unfetter inheritances. However, the General Assembly of this State evidently did not agree with the dictum of the illustrious Chancellor Harper above quoted in regard to the wisdom of the rule, because in 1924 an Act was passed abolishing it. Section 8802, Code 1932. Or perhaps it would be more correct to say that the General Assembly deemed the rule unsuited to modern conditions. At all events, this statute brings our State into line with a great many other states which had previously abolished the

rule. But this statute has no effect whatever upon the instant case, because it is therein stipulated that the provisions thereof shall not affect wills, deeds and other instruments in writing executed prior to the first day of October, A. D. 1924, or the construction thereof; and the will involved in this case was executed and probated long prior to that date.

Counsel for the appellant suggests that the rule in ▮▮ *Shelley's case* should not apply here, on the ground that the word "heirs" may have been used by the testator as synonymous with the word "children"; but it is not contended, nor could it be, that there is anything whatever in the will to indicate that the word "heirs" was used in any other than its technical sense. The theory that the popular signification of the word "heirs" is that of "children", and that where a will is drawn by a layman it might be assumed that he had this signification in mind, is of course completely untenable. Technical words must be given their technical meaning, unless a contrary intention can be discovered within the four corners of the instrument itself.

It is undisputable that Henrietta W. Jarecky took a fee-simple title to the property in question under the will of her father, and that the purchaser was rightly required to comply with his bid.

The order of the Circuit Court is affimed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES BAKER, FISHBURNE and STUKES concur.