## UNITED STATES v. 15,883.55 ACRES OF LAND, MORE OR LESS, IN SPARTANBURG COUNTY, S. C., et al.

### No. 203.

District Court, W. D. South Carolina, Spartanburg Division.

April 23, 1942.

J. C. Wrightson, of Spartanburg, S. C., guardian ad litem.

J. R. Flynn, of Union, S. C., for Samuel J. Freeman and others.

Rufus M. Ward, of Spartanburg, S. C., for Mrs. Kate Carlisle.

Horace L. Bomar, Jr., Sp. Asst. to the U. S. Atty., of Spartanburg, S. C., for the United States.

WYCHE, District Judge.

On March 3, 1941, a Petition in Condemnation and Declaration of Taking by the Secretary of War for United States of America were duly filed in the above entitled cause against a certain area of land in Spartanburg County, South Carolina, containing 15,883.55 acres of land, more or less. Simultaneously with the filing thereof there was deposited into the Registry of this Court a sum of money as the estimated compensation for the property described therein. The Declaration of Taking contained a specific perimeter description of the area of land embraced in this action, the name of the presumptive owner, or owners, of each of the individual tracts embraced in said area of land, the estimated acreage contained therein, and the allotment of a sum of money out of the total deposit as the estimated award of compensation for each of the individual tracts or parcels. Thereafter, on August 2, 1941, an Amendment of the Declaration of Taking was filed reflecting the allocation of additional deposits for certain of the individual tracts therein identified, included among which was the tract, which was identified therein as Tract No. 153, containing 35.2

acres, and listed in the name of Kate Carlisle.

A judgment of this Court on the Declaration of Taking was duly entered on March 3, 1941, decreeing the fee simple absolute title to the land therein described to have become vested in the United States of America upon the filing of the Declaration of Taking and the making of said deposit, and by virtue of said judgment the right to just compensation vested in the persons entitled thereto. On August 16, 1941, judgment of this Court was duly entered on the Amendment of the Declaration of Taking confirming the vestment of title under the original Declaration of Taking.

The total sum of four hundred twenty five dollars, ($425.00) was deposited and allocated as the estimated award for Tract 153. The parties hereto have agreed that the sum of seven hundred dollars ($700.00) is the fair market value and just compensation for this tract of land, including all claims arising out of the taking thereof.

The sole issue here presented is whether the condemnation award should be paid to Mrs. Kate Carlisle, or whether the children of James Elmer Freeman, devisee under the will of Harriet E. Quinn have any interest in the award.

The last will and testament of Harriet E. Quinn, deceased, late a resident and citizen of Spartanburg, South Carolina, was admitted to probate on March 17, 1913. The second paragraph of this will reads as follows: "Second, I give, bequeath and devise to my beloved nephew, James Elmer Freeman, during the period of his natural life all my property both personal and real owned and possessed by me at my death, provided furthermore that he shall furnish a home for my brother William Burgess during his natural life. If my nephew James Elmer Freeman should die without any legal heirs then at his death I desire that his property should go to my sister, Nannie Harmon or her heirs—but if my nephew James Elmer Freeman should leave any bodily heirs then at his death I desire my property to revert to them."

The facts of the case which have been stipulated may be briefly stated in this way: James Elmer Freeman is alive and has five living children, three of whom, to-wit, Samuel J. Freeman, Bertha Freeman Cody and Louis Freeman, are of age, and two of whom, to-wit, Carrie Freeman, age 16, and Frances Freeman, age 12, are minors. J. C. Wrightson, Esq., an able and a reputable attorney of the Spartanburg bar, has been appointed as guardian ad litem to represent the interests of said minors in this controversy.

On October 30, 1922, James Elmer Freeman executed a mortgage to Kate R. Carlisle over the property here in issue, which he claimed to own under the terms of the aforementioned will of Harriet E. Quinn. In 1925 this mortgage being in default was foreclosed by the mortgagee and bought in by her at the foreclosure sale. Mrs. Carlisle held the record title to this property from the date of the foreclosure sale above referred to until it was condemned by the United States Government. William Burgess, deceased, the brother of the testatrix, was furnished a home during his natural life by James Elmer Freeman so the proviso of the will in regard to this is not here in issue.

The contention of the Freeman children is that the testatrix clearly intended that their father was to have only a life estate in the premises and that they are the vested remaindermen. Arguing from this premise, it is further contended that Mrs. Carlisle bought nothing at the Master's Sale except the life estate of James Elmer Freeman.

The position of Mrs. Carlisle is that the testatrix by using the technical words "bodily heirs", in limiting the remainder after the falling in of the life estate, devised to James Elmer Freeman a fee conditional interest in the premises and that such interest having been alienated after the birth of issue, she, as purchaser, took fee simple title to the premises.

█ It is a salutary rule of property in South Carolina that in construing a will, the intention of the testatrix, as ascertained from the words used by her, must govern, unless this intention conflicts with some settled principle of law which forbids such supposed intention from being carried into effect. Foreign Mission Board, etc., v. Gaines, D.C., 42 F.Supp. 85; Bonds v. Hutchison, S.C., 1942, 18 S.E.2d 661; Strother v. Folk, 123 S.C. 127, 115 S.E. 605. Deleting from paragraph two of the will the proviso in regard to the furnishing of a home to William Burgess, deceased, the fulfillment of which is not in dispute, and also the executory devise to Nannie Harmon or her heirs, the para-

graph under consideration reads as follows: "Second, I give, bequeath and devise to my beloved nephew, James Elmer Freeman, during the period of his natural life all of my property both personal and real owned and possessed by me at my death * * * but if my nephew James Elmer Freeman should leave any bodily heirs then at his death I desire my property to revert to them."

This plain and explicit language provides a typical instance for the application of the rule in Shelley's Case; that is to say, there is a devise of a life estate with remainder over to the heirs of the life tenant, without qualification or superadded words. Jarecky v. Jarecky, 194 S.C. 456, 9 S.E.2d 922.

While the rule in Shelley's Case has now been abolished in South Carolina, Code of Laws of South Carolina, 1932, Section 8802, by the terms of the abrogating statute, such rule is still to be given effect in the construction of wills, deeds, etc., executed prior to October 1, 1924.

The instant will was executed on December 28, 1908, so the rule in Shelley's Case is applicable if the terms of the will fall within such rule.

An excellent commentary on the principle and theory upon which this rule is predicated may be found in Jones' Blackstone, Volume 1, page 1030: "But, if an estate be made to A for life, remainder to his right heirs in fee, his heirs shall take by descent; for it is an ancient rule of law, that wherever the ancestor takes an estate for life, the heir cannot by the same conveyance take an estate in fee by purchase, but only by descent. And, if A dies before entry, still his heir shall take by descent, and not by purchase; for, where the heir takes anything that might have vested in the ancestor, he takes by way of descent. The ancestor, during his life, beareth in himself all his heirs; and therefore, when once he is or might have been seized of the lands, the inheritance so limited to his heirs vests in the ancestor himself; and the word 'heirs' in this case is not esteemed a word of purchase, but a word of limitation, inuring so as to increase the estate of the ancestor from a tenancy for life to a fee simple. And, had it been otherwise, had the heir (who is uncertain till the death of the ancestor) been allowed to take as a purchaser originally nominated in the deed, as must have been the case if the remainder

had been expressly limited to Matthew or Thomas by name; then, in the times of strict feudal tenure the lord would have been defrauded by such a limitation of the fruits of his seigniory, arising from a descent to the heir."

In short, the determining factor depends upon whether the words used in creating the limitation over after the life estate are words of "limitation" or words of "purchase". If such words are of "limitation", the ancestor (life tenant) takes a fee conditional estate by operation of law; but if such words are words of "purchase", the grant is of a life estate only. This rule was enunciated by Chancellor Harper in Williams v. Foster, 1836, 3 Hill, S.C., 193, in these words: "By the rule in Shelley's case, which has been an admitted and established rule of law for centuries, and the wisdom of which is more approved as it is better understood, it was determined that if an estate of freehold be given to the ancestor, and a remainder be thereon limited to his heirs, or to the heirs of his body, such remainder is immediately executed in possession in the ancestor so taking the freehold, and he takes an estate in fee or in tail, according to the terms of the limitation. This is an arbitrary rule of law unconnected with and independent of the donor's or testator's intention."

Turning to the pertinent portion of the will here under consideration, no question can be raised as to the fact that the testatrix devised her property to James Elmer Freeman during his natural life. Had the will stopped here, it is beyond question that James Elmer Freeman could claim only a life estate in such property but the will provides further, "if my nephew, James Elmer Freeman, should leave any bodily heirs then at his death I desire my property to revert to them", which language creates a fee conditional estate. The conventional words are used here by which such an estate is created. The devise restricts a fee to the first devisee and his bodily heirs (Dukes v. Shuler, 185 S.C. 303, 194 S.E. 817; Du Bose v. Flemming, 93 S.C. 182, 76 S.E. 277; Boyles v. Wagner, 91 S.C. 183, 74 S.E. 380; Du Pont v. Du Bos, 52 S.C. 244, 29 S.E. 665; Bonds v. Hutchison, supra), so that upon the birth of issue he would take a fee with the right to alienate during his life but not to dispose of by will. Withers v. Jenkins, 21 S.C. 365, 368; Burnett v. Burnett, 17

S.C. 545, 551; Izard v. Middleton, Bailey Eq., S.C., 228; Dukes v. Shuler, supra.

The will under consideration is almost identical with the wills construed in the cases of Bonds v. Hutchison, supra, and Dukes v. Shuler, supra, and it is clear from the foregoing cases that James Elmer Freeman took a fee conditional estate under the terms of the will of Harriet E. Quinn, the devisee after the birth of issue having conveyed his interest in such premises by way of mortgage deed and Mrs. Carlisle having purchased such interest at the foreclosure sale, took a fee simple title to the premises involved. Having reached the conclusion that Mrs. Carlisle owned the premises involved in fee at the time they were condemned by the United States Government, it is patent that the money now held in escrow by the Government all belongs to Mrs. Kate Carlisle and that neither James Elmer Freeman nor his children have any equity therein.

Let an appropriate order be submitted.